**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

BOB PETERSON, et al.,

    Plaintiffs,

v.

H. MARTIN SPROCK, et al.,

    Defendants.

CIVIL ACTION NO.
1:06-CV-3087-RWS

## **ORDER**

This case comes before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) as to Counts II, III, and VIII of Plaintiffs' Amended Complaint [119] and Defendants' Requests for Hearing [113, 114, & 151]. After a review of the record, the Court enters the following Order.

## **Background**

Plaintiffs, comprised mainly of investors and franchisees of the Defendants and their affiliates initiated this action for claims allegedly arising

out of franchise agreements to operate Mama Fu's franchises. (Dkt. No. [81] at ¶ 50.) Plaintiffs allege that Defendants made misrepresentations in the Uniform Franchise Offering Circulars ("UFOCs") and franchise agreements; that Defendants intermingled individual and corporate assets; and that Defendants failed to disclose "kickback" payments from suppliers. (Id. at ¶¶ 44-96.) Plaintiffs assert nine claims based on these allegations.

Plaintiffs assert similar or identical claims regarding Georgia Civil RICO, the Robinson-Patman Act, and fraud against several individuals and companies associated with Defendant Ravings Brand Holdings, Inc. in two related cases.[1] The legal arguments made in this Motion for Judgment on the Pleadings mirror arguments set forth in motions filed in the related cases.

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to three claims raised by Plaintiffs: violation of the Georgia Civil RICO act (Count II); fraud (Count III); and, violation of Section 2(c) of

---

[1] The additional cases asserting similar or identical claims are: Massey, Inc., et al. v. Moe's Southwest Grill, LLC, et al., No. 1:07-CV-0741 and Moe Dreams, LLC, et al. v. H. Martin Sprock, III et at., No. 1:08-CV-0196. Defendants filed Motions to Dismiss [13, 43] identical antitrust, racketeering, and fraud claims in Case No. 1:08-CV-0196 and a Motion for Judgment on the Pleadings [33] on identical antitrust, racketeering, and fraud claims in Case No. 1:07-CV-0741.

Robinson-Patman Act (Count VIII) [119]. Defendants also request a hearing on the Motion for Judgment on the Pleadings. [151]. However, the Court finds that the Parties' briefs and the record provide sufficient basis for a determination of the matters raised in this Motion. Therefore, Defendants' Request for Hearing [151] is **DENIED** as it relates to a hearing on Defendants' Motion for Judgment on the Pleadings [119]. Also, because the Court has ruled on Plaintiffs' Motions to Compel [98, 100, & 122], the Requests for Hearing [113 & 114] are **DENIED** and Request for Hearing [151] is **DENIED** as it relates to the Plaintiff's Motion to Compel. However, the Request for Hearing [151] is **GRANTED** as it relates to Defendants' Motion to Consolidate for Mini-Trial [120]. Said motion shall be heard on Tuesday, October 28, 2008 at 2:30 p.m. in Courtroom 2105, United States Courthouse, Atlanta, Georgia.

## Discussion

### I. Legal Standard

After the pleadings are closed but within such time as not to delay trial, a party may file a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c); see Conner v. Tate, 130 F. Supp. 2d 1370, 1373 (N.D. Ga. 2001). Judgment on

3

the pleadings is appropriate only when no issues of material fact exist, and the movant is entitled to judgment as a matter of law. Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996). A court considers only the substance of the pleadings and any judicially noticed facts, and the court accepts the facts in the complaint as true and views them in the light most favorable to the nonmoving party. Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).

**II.     Georgia Civil Rico Act Claim (Count II)**

Plaintiffs' Amended Complaint asserts a cause of action under the Georgia Civil Rico Act, alleging that Defendants engaged in a pattern of racketeering activity in violation of O.C.G.A. §16-14-1 *et seq.* (Dkt. No. [81] at ¶¶ 106-115.) Defendants seek a judgment on the pleadings as to Count II on the premise that Plaintiffs have failed to state a Geogia Civil RICO claim. (Dkt. No. [119] at 21.) Defendants assert that Plaintiffs lack standing to bring a racketeering claim because they cannot demonstrate a causal link between any injury and the alleged predicate acts outlined in Count II. (Id. at 23.) Next, Defendants state that Plaintiffs have failed to state a claim under the Georgia Civil Rico act because the Amended Complaint is "devoid of any factual

4

allegations, and... based on vague and conclusory allegations."(Id. at 24.) Such conclusory allegations fail to demonstrate that Defendants were engaged in a RICO violation under O.C.G.A. §16-14-4(c). (Id. at 25.) Even under the alleged less restrictive Georgia RICO pleading requirement, Defendants argue that Plaintiffs' "shotgun pleadings" and generalized complaints are insufficient to establish a cause of action. (Dkt. No. [148] at 15-19.) Defendants cite Mills v. Fitzgerald, 668 F. Supp. 1554 (N.D. Ga 1987) stating, with respect to federal and Georgia RICO that, "reallegation of earlier paragraphs is insufficient" to state a claim. Id. at 1560 (*citing* Gregoris Motors v. Nissan Motor Corrp. in USA, 630 F. Supp. 902, 913 (E.D. N.Y. 1986) ("RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint.")). Finally, Defendants assert that Plaintiffs' alleged predicate acts of Theft by Deception (O.C.G.A. § 16-8-3), Theft by Taking (O.C.G.A. § 16-8-2), Theft by Conversion (O.C.G.A. § 16-8-4), and False Statements and Writings (O.C.G.A. § 16-10-20) fail as a matter of law, and therefore, cannot comprise a "pattern of racketeering" required under O.C.G.A. §16-14-4. (Dkt. No. [119] at 26.)

5

In response, Plaintiffs assert that they have adequately plead a Georgia RICO claim such that Defendants' motion should be denied. (Dkt. No. [141] at 30.) Plaintiffs assert that the Georgia RICO statute requires a demonstration in the pleadings that, "(1) defendant violated the act and (2) the plaintiff was injured as a result of the violation. (Id. at 32) (*citing* Pelletier v. Zweifel, 921 F.2d 1465, 1513 (11th Cir. 1991)). Under the standard set forth in Pelleteir, Plaintiffs argue that the Amended Complaint sufficiently proves the predicate acts of Theft by Deception (O.C.G.A. § 16-8-3), Theft by Taking (O.C.G.A. § 16-8-2), and Theft by Conversion (O.C.G.A. § 16-8-4). (Dkt. No. [141] at 32.) Plaintiffs point to specific paragraphs of the Amended Complaint which allege the elements of a Theft by Deception claim. (Id. at 33; Amended Complaint at ¶¶ 43, 45, 50-59, 64, 84, 85.) Plaintiffs claim that although they "did not explicitly allege each element in the Georgia RICO section of the Amended Complaint (¶¶ 106-115), the elements are clearly pled within the Amended Complaint." (Dkt. No. [141] at 35.)

After a review of the pleadings, the Court finds that Plaintiffs have met the burden of pleading a Georgia RICO claim. Plaintiffs would have been better served by setting out the specific factual allegations underlying their

6

Georgia RICO claim in Count II. However, the Amended Complaint, when considered in its entirety, sets forth the acts upon which Plaintiffs rely to establish a RICO claim. Although each alleged predicate act is not clearly and succinctly stated in the Georgia RICO section of the Amended Complaint, the Court finds that this error does not warrant a judgment on the pleadings in favor of Defendants. The Court holds that the Amended Complaint contains sufficient information that Defendants can adequately determine the alleged facts that comprise the RICO claim. Furthermore, viewing the facts in the light most favorable to Plaintiffs, the Court holds that the Amended Complaint sufficiently alleges an injury and a causal link such that Plaintiffs have standing to bring a Georgia Civil RICO claim. Therefore, Defendants' Motion for Judgment on the Pleadings as to Plaintiff's Count II Georgia Civil RICO claim is **DENIED**.

### III. Fraud Claim (Count III)

Plaintiffs' Amended Complaint alleges that Defendants made material false representations of fact and omitted mandatory disclosures in conjunction with the UFOCs and franchise agreements. (Dkt. No. [81] at ¶¶ 116-121.) Plaintiffs assert that Defendants' alleged misrepresentations and omissions

7

constitute fraud because they were made with knowledge of their falsity, for the purpose of inducing Plaintiffs' reliance, and Plaintiffs relied on the false representations to their detriment. (Id.)

Defendants move for judgment on the pleadings on the Count III fraud claim asserting that Plaintiffs fail to allege fraud with particularity as required by Fed. R. Civ. P. 9(b).[2] Defendants state that Plaintiffs have not met this burden because they fail to sufficiently plead the "who, what, when, where, and how" of the alleged misstatement. (Dkt. No. [119] at 19) (*citing* DiLeo v. Ernst & Young, 901 F.2d 624, 627 *reh'g denied* (7th Cir. 1990), *cert. denied*, 498 U.S. 941 (1990)). Defendants describe Plaintiffs' Amended Complaint as "so devoid of specificity that the reader can only speculate as to how Defendants' statements or omissions were relied upon by, or mislead, Plaintiffs to the advantage of Defendants." (Dkt. No. [119] at 19.) Further, Plaintiffs' fraud claim fails to meet the heightened pleading requirement because Plaintiffs combine all Plaintiffs and Defendants in their allegations, rather that stating specific allegations against each individual party. (Id. at 18-20.) Defendants

---

[2] Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

8

assert that the Amended Complaint does not provide fair notice to each Defendant of its alleged fraudulent behavior and therefore, judgment should be entered in favor of Defendants on Plaintiffs' Count III fraud claim. (Id. at 20.)

In response, Plaintiffs argue that the Amended Complaint does plead the elements of fraud with the particularity required by Fed. R. Civ. P. 9(b). Plaintiffs state that the Amended Complaint identifies the UFOC as a primary source of the false statements and identifies the specific statements that Plaintiffs relied upon. (Dkt. No. [141] at 26; Amended Complaint [81] at ¶¶ 51, 55, 60.) Further, the Amended Complaint specifically alleges that the Defendants breached their contractual duty to disclose any revenue received by suppliers by concealing alleged "kickback" payments from suppliers. (Dkt. No. [141] at 27; Amended Complaint [81] at ¶¶ 89-97.) Plaintiffs state that because each Plaintiff received substantially the same UFOC, the source of the alleged fraud claim, each Plaintiff relied upon the same misrepresentations. (Dkt. No. [141] at 29.) Therefore, the failure to separately identify the fraud directed at each Plaintiff does not cause the claim to fail for lack of particularity. Similarly, Plaintiffs allege that, as to the misrepresentations in the UFOCs, Defendants act as "one large entity" and are not "legally distinguishable as

9

separate persons or entities." (Id.; Dkt. No. [81] at ¶ 87.) Thus, the pleadings, which address the Defendants collectively, do not fail to provide fair and adequate notice to each Defendant of the alleged fraudulent misrepresentations. (Dkt. No. [141] at 29.)

After a review of the Parties' briefs, the Court finds that Plaintiffs have plead the claim of fraud with sufficient particularity to meet the requirements of Federal Rule of Civil Procedure 9(b). When examined in its entirety, the Amended Complaint provides Defendants with specific allegations of fraud, including the source of the alleged fraudulent misrepresentations, the alleged duty of the Defendants to disclose, and the alleged omissions. Taking the Amended Complaint as a whole, the Court finds that the Plaintiffs properly identify Defendants with the particularity sufficient to place each Defendant on notice of their roles in the alleged fraud. The Court further finds that due to the alleged similarities among the Plaintiffs' UFOCs, the failure to identify the fraud associated with each Plaintiff does not warrant a judgment on the pleadings. In viewing the facts in the light most favorable to Plaintiffs, as required by the appropriate legal standard, the Court finds that Plaintiffs have

10

adequately plead a claim of fraud such that Defendants' Motion for Judgment on the Pleadings on Plaintiff's Count III fraud claim is **DENIED**.

## IV. Robinson-Patman Act Claim (Count VIII)

Plaintiffs assert that Defendants' receipt of alleged "kickbacks" from vendors constituted a violation of Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 12 *et seq.* (Dkt. No. [81] at ¶¶ 147-154.)[3] Plaintiffs claim a competitive injury resulting from Defendants "accept[ing] benefits from vendors, in exchange for the opportunity to access and market goods, wares and merchandise to the franchisees and to execute agreements to sell provisions, beverages and other products." (Id. at ¶ 150.) Further, Plaintiffs assert that this alleged "kickback" scheme is a *per se* violation of Section 2(c) of the Robinson-

---

[3]Section 2(c) of the Robinson-Patman Act reads as follows:

It shall be unlawful for any person engaged in commerce, to pay or grant, or to receive or to accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

15 U.S.C. §13(c).

11

Patman Act and entitles Plaintiffs to "treble damages therefrom, the costs of this litigation, attorneys' fees and pre-judgment interest, pursuant to 15 U.S.C.§ 15(a)." (Id. at ¶ 154.)

Defendants move for judgment on the pleadings on Count VIII on the basis that Plaintiffs lack standing to bring a claim for alleged violations of Section 2(c) of the Robinson-Patman Act. (Dkt. No. [141] at 7.) Relying upon Todorov v. DCH Healthcare Auth., 921 F.2d 1438 (11th Cir. 1991), Defendants claim that Plaintiffs fail to meet the two requirements necessary for antitrust standing. Id. at 1449. The court in Todorov outlined a two-pronged approach to examining whether a plaintiff should be afforded antitrust standing: "[f]irst, a court should determine whether the plaintiff suffered 'antitrust injury'; second, the court should determine whether the plaintiff is an efficient enforcer of the antitrust laws, which requires some analysis of the directness or remoteness of the plaintiff's injury." Id.

A.   Antitrust Injury

An antitrust injury is defined as:

injury of the type the antitrust laws were intended to prevent
and that flows from that which makes the defendants' acts
unlawful. The injury should reflect the anticompetitive effect

12

> either of the violation or of anticompetitive acts made possible
> by the violation. It should, in short, be the type of loss that the
> claimed violations would be likely to cause.

Id. Defendants assert that the injury alleged by Plaintiffs is not the type of injury that antitrust laws were intended to prevent. (Dkt. No. [119] at 9.) Defendants cite 2660 Woodley Road Joint Venture v. ITT Sheraton Corp., 369 F.3d 732 (3rd Cir. 2004) for the assertion that Defendants' alleged "kickbacks" and Plaintiffs' competitive injury do not qualify as an antitrust injury. In 2660 Woodley Road, the Third Circuit held that "paying inflated purchasing prices to vendors, without more," was not sufficient to establish an antitrust injury under the Robinson-Patman Act. Id. at 738-39.

In opposition, Plaintiffs claim that the alleged "kickbacks" forced Plaintiffs to operate their businesses at a competitive disadvantage, thereby resulting in a financial injury. (Dkt. No. [141] at 15.) Although not alleged in the Amended Complaint, Plaintiffs assert that Defendants engaged in commercial bribery through the "kickback" payments, and that such actions are *per se* violation of the Robinson-Patman Act. Ideal Plumbing Co. v. Benco, Inc., 529 F.2d 972, 977 (8th Cir. 1976.); FTC v. Simplicity Pattern Co., 360 U.S. 55, 65 (1959). Plaintiffs assert that the "kickbacks" and resulting injury

13

demonstrate that the "probable effect of the discrimination would be to allow [a] favorable competitor to draw sales from...the unfavored competitor." Substantial Investments, Inc. v. D'Angelo Franchising Corp., U.S. Dist LEXIS 17300 (D. Mass. 2004) (*citing* Best Brands Beverages, Inc. v. Falstaff Brewing Co., 842 F.2d 578, 584 (2nd Cir. 1987) (*quoting* J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 569-570, 68 L.Ed.2d 442, 101 S.Ct. 1923 (1981) (Powell, J., dissenting in part)). Because the suppliers allegedly passed the cost of the "kickbacks" on to Plaintiffs, Plaintiffs were forced to operate at a competitive disadvantage. (Id. at 21); see Substantial Investments, Inc., 2004 U.S. Dist. LEXIS 17300 at *8.

Further, Plaintiffs assert the application of Section 2(c) in situations where an intermediary or agent receives a payment that crosses the seller-buyer line. Seaboard Supply Co. v. Congoleum Corp., 770 F.2d (3rd Cir. 1985); Bridges v. MacLean-Stevens Studios, Inc., 201 F.3d 6, 11 (1st Cir. 2000). Plaintiffs allege Defendants acted as intermediaries because they "controlled the source/ supplier of the Franchisee-Plaintiffs' goods, and directed the Plaintiffs to purchase the goods from the supplier from whom they were receiving kickbacks." (Dkt. No. [141] at 18.) Additionally, Plaintiffs allege Defendants'

14

actions to "negotiate supplier arrangements on behalf of Franchisee-Plaintiffs" resulted in an agency relationship between Plaintiffs and Defendants. Plaintiffs allege that the "kickback" payments to Defendants crossed the buyer-seller line. Therefore, Plaintiffs assert that they have adequately demonstrated a claim for commercial bribery under Section 2(c) of the Robinson-Patman Act.

In reply, Defendants argue that Plaintiffs do not plead a commercial bribery claim. (Dkt. No. [148] at 5.) Regardless, Defendants assert that Plaintiffs have not alleged sufficient facts to constitute a commercial bribery claim. (Id.) Specifically, Plaintiffs do not demonstrate any improper intent or conduct on behalf of the vendors who paid the alleged "kickbacks" to Defendants. (Id.) Absent "any allegation that the vendor payments were, in fact, bribes- that is, that they were paid by vendors with the intent to improperly influence or corrupt [the defendant[s]]," Plaintiffs do not have a claim under commercial bribery.[4]

---

[4]Dkt. No. [148] at 6.; *citing* Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 222 (2nd Cir. 2004); see also Freedman v. United States, 437 F. Supp.1252, 1260 (N.D. Ga. 1977) (defining commercial bribery as an offense "committed by the offering and/or paying of a bribe to an employee, agent, or servant, with the intent that his relation to his employer, principal, or master to be influenced").

15

Furthermore, Defendants assert that Plaintiffs have not demonstrated a fiduciary or agency relationship as required under a Section(c) claim based on commercial bribery. (Dkt. No. [148] at 8.) Defendants contend the nature of the business relationship between Plaintiffs and Defendants was insufficient to establish a fiduciary relationship. (Id.) (*citing* Collins v. Int'l Dairy Queen, 54 F.Supp, 2d 1351, 1351 (M.D. Ga. 1999) (stating "[t]he vast majority of courts who have considered the issue have ruled that the franchisor-franchisee relationship, standing alone, does not create a fiduciary relationship.")) Similarly, the Franchise Agreements entered into by Plaintiffs and Defendants explicitly provided that, "no partner, joint venture or fiduciary relationship shall exist between Franchisee and Franchisor." ("Franchise Agreement" Dkt. No. [1-3] at § 14.) Therefore, Defendants assert that they are not Plaintiffs' agent, representative or intermediary, and the commercial bribery claim must fail. (Dkt. No. [148] at 10); Chmieleski v. City Products Corp., Trade Cas. (CCH) ¶ 64,446 (W.D. Mo. 1983).

B.  Proper Plaintiffs

Defendants further move for judgment on the pleadings under the theory that Plaintiffs lack standing to bring a claim under the Robinson-Patman Act.

16

(Dkt. No. [119] at 14.) Under the Todorov analysis, Plaintiffs are not the "proper party to enforce the antitrust laws," because there are more direct victims of the alleged antitrust violations. (Id.); see Todovor, 921 F.2d at 1448; see also 2660 Woodley Road, 369 F.3d at 741-42. Defendants state that there are other, more direct victims of Defendants' alleged misconduct. (Dkt. No. [119] at 15; see Florida Seed Co. v. Monsanto Co., 915 F. Supp. 1167, 1176 (M.D. Ala. 1995) (internal citations omitted), *aff'd*, 105 F.3d 1372 (11th Cir. 1997) ("only those parties who can most effectively vindicate the purposes of the antitrust laws have antitrust standing to maintain a private action.") The "[v]endors who may have been prevented from selling goods...because they refused to participate in the...program of surcharged and rebates are far more direct victims." 2660 Woodley Road, 369 F.3d at 741-42.

In response, Plaintiffs assert that they are the proper plaintiffs to bring the antitrust suit. (Dkt. No. [141] at 23.) Plaintiffs distinguish the 2660 Woodley Road case by stating that, unlike those plaintiffs, Plaintiffs here have not conceded that there are other more direct victims of Defendants' conduct.[5]

---

[5]Id. The Court in 2660 Woodley Road stated that the plaintiffs came "close to conceding" that there were other more direct victims by alleging that:

17

Rather, Plaintiffs assert injury resulting from incurring the cost of secret "kickbacks" that Defendants were receiving. (Dkt. No. [141] at 25.)

C.  Findings on Robinson-Patman Act claim

The Court finds that Plaintiffs have not adequately plead a claim under Section 2(c) of the Robinson-Patman Act.[6] First, the Court finds that Plaintiffs' alleged injury is not the type of injury that the Robinson-Patman Act was designed to prevent. While Plaintiffs may have a claim for breach of contract, they have not demonstrated a competitive injury that rises to the level of an antitrust injury. See 2660 Woodley Road, 369 F.3d at 738-39. Examining the facts under a commercial bribery theory, the Court finds that Plaintiffs have failed to allege any improper intent or conduct on the part of the vendors who

> [v]endors unwilling to pay kickbacks to Defendants were competitively harmed, and by mandating the Hotel's participation in national and regional contracts negotiated by [Sheraton], Defendants denied [plaintiff] the opportunity to obtain advantageous prices and terms from non-participating vendors. Favored vendors not only drew sales or profits from non-favored vendors, but the attendant reduction in competition and higher costs resulted in direct antitrust injury to [plaintiff]. 2660 Woodley Road, 369 F.3d. at 742.

[6]The Court finds it inappropriate to grant Plaintiffs' request to amend the complaint. (Dkt. No. [141] at FN18.) As the Court ruling is based on Plaintiffs' lack of standing to assert a Robinson-Patman Act claim, an amended complaint would not rectify this issue in the pleadings.

18

made the payments to the Defendants. See Blue Tree Hotels, 369 F.3d at 221. The Court further finds that other vendors or Plaintiffs' customers would be more direct victims that would be the proper plaintiffs to bring an antitrust suit resulting from Defendants' alleged conduct. Thus, the Court holds that Plaintiffs have not met the two-prong requirements for determining antitrust standing outlined by the Todorov court. See Todorov 921 F.2d at 1449; see also Cottman Transmission Sys. v. ITT Sheraton Corp., 536 F. Supp.2d 543, 559 (E.D.Pa. 2008). Therefore, Defendants' Motion for Judgment on the Pleadings is **GRANTED** as to Count VIII of Plaintiffs' Amended Complaint. Count VIII of Plaintiffs' Amended Complaint is **DISMISSED**.

## Conclusion

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) is **DENIED** as to Counts II, III and **GRANTED** as to Count VIII of Plaintiffs' Amended Complaint [119]. Plaintiffs' Count VIII Robinson-Patman Act claim in the Amended Complaint [81] is **DISMISSED**. Because the Court has ruled on Plaintiffs' Motions to Compel [98, 100, & 122], the Requests for Hearing [113 & 114] are **DENIED**. Defendants' Request for Hearing [151] is **GRANTED, in part**, and **DENIED,**

19

AO 72A
(Rev.8/82)

**in part**. The Request is denied as it relates to Defendants' Motion for Judgment on the Pleadings [119] and Plaintiffs' Motion to Compel [122] and granted as it relates to Defendants' Motion to Consolidate for Mini-Trial [120]. Defendants' Motion to Consolidate for Mini-Trial [120] is set for hearing on Tuesday, October 28, 2008 at 2:30 p.m. in Courtroom 2105, United States Courthouse, Atlanta, Georgia.

**SO ORDERED** this  24th  day of October, 2008.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE